# EXHIBIT A

<u>IN THE UNITED STATES DISTRICT COURT</u>

<u>FOR THE NORTHERN DISTRICT OF TEXAS</u>

<u>DALLAS DIVISION</u>

| | |
|---|---|
| TOWN OF DAVIE POLICE PENSION PLAN, individually and on behalf of all others similarly situated, | ( 3:15-CV-03415-D<br>(<br>(<br>( |
| Plaintiff, | ( |
| VERSUS | (<br>( DALLAS, TEXAS |
| PIER 1 IMPORTS, INC., ALEXANDER W. SMITH and CHARLES H. TURNER, | (<br>(<br>( |
| Defendants. | ( MARCH 4, 2016 |

TRANSCRIPT OF HEARING

BEFORE THE HONORABLE SIDNEY FITZWATER

UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

Representing Municipal Employees' Retirement System of Michigan

MICHAEL D. BLATCHLEY
Bernstein Litowitz Berger & Grossman LLP
1251 Avenue of the Americas
44th Floor
New York, NY 10020
212-554-1400
212-554-1444 (fax)
MichaelB@blbglaw.com

David T Moran
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
214 953 6051
214 661 6677 (fax)
dmoran@jw.com

PAMELA J. WILSON, CSR/RMR/CRR
U.S. DISTRICT COURT - 214.662.1557

```
Representing Alaska Electrical Pension Fund

DANIELLE S. MYERS
Robbins Geller Rudman & Dowd LLP
655 W Broadway
Suite 1900
San Diego, CA 92101-3301
619/231-1058
619/231-7423 (fax)
danim@rgrdlaw.com

JOE KENDALL
Kendall Law Group LLP
3232 McKinney Avenue, Suite 700
Dallas, TX 75204
214/744-3000
214/744-3015 (fax)
administrator@kendalllawgroup.com




                                        





         COURT REPORTER:        PAMELA J. WILSON, RMR, CRR
                                1100 Commerce Street, Room 1535
                                Dallas, Texas 75242
                                214.662.1557
                                pam_wilson@txnd.uscourts.gov


     Proceedings reported by mechanical stenography,
transcript produced by computer.
```

1  certification from Patricia Tarini; you have the arguments
2  before the court; there's the -- the certification states that
3  they will unequivocally represent the best interests of the
4  class, and that is -- is more than what you need at this stage
5  to make that determination.
6         THE COURT:  Is there anything else you wanted to go
7  through before I hear from opposing counsel?
8         MR. BLATCHLEY:  Your Honor, I'm happy to give my
9  time to opposing counsel.
10     Thank you.
11         THE COURT:  You may proceed, counsel.
12         MS. MYERS:  Thank you, Your Honor.  May it please
13 the court.  Danielle Myers of Robbins Geller on behalf of
14 Alaska Pension Fund.
15     I want to start by noting that there are no arguments
16 against Alaska's appointment.  All of the movants in this case
17 recognize that Alaska has satisfied each of the PSLRA's
18 requirements for appointment as lead plaintiff.
19     My client filed a timely motion in response to the August
20 27th statutory notice informing investors of Pier 1 stock
21 between December 2013 and February 2015 that they could file a
22 motion by October 26th.  And with the $219,000 loss in the
23 original class period, my client also has the largest
24 financial interest in the original class period.  My client
25 also has a $425,000 financial interest in the expanded class

1  period.
2      And contrary to Michigan's assertion, we did not switch
3  methods in opposition to their motion in calculating our loss.
4  We noted in footnote 1 and footnote 2 of our opening motion
5  that we were concerned about the possibility of a last minute
6  expansion to benefit one of the movants represented by
7  Michigan's counsel and that's why we included both of our loss
8  numbers at the very outset.
9      And unlike Michigan, Alaska, and in fact every other
10 movant, purchased stock and suffered losses in both periods.
11 Michigan is the only movant that did not suffer a loss in the
12 original class period.
13     It's also apparent that Alaska satisfies the Rule 23
14 requirements, Your Honor.  It's typical.  Its claims are
15 typical.  They have the same characteristics as the class's
16 claims.  It's also adequate.  There are no conflicts of
17 interest or unique defenses.
18     Alaska also has demonstrated success in this circuit.
19     It obtained a favorable loss causation decision from the
20 Fifth Circuit and ultimately obtained a $55 million in the
21 Flowserve case.  No one has also questioned the credentials of
22 my firm or Mr. Kendall's firm as counsel.
23     The only attempt to rebut Alaska's qualifications to
24 serve in this case is Michigan's statement that we don't have
25 the largest financial interest in the class period that they

1   expanded on the eve of the deadline.
2       And they also suggest in their reply brief and again
3   today an argument that my client is somehow inadequate for
4   shining a light on their tactical maneuver of filing a
5   expanded class period on the eve of the deadline to allow MERS
6   to have a loss and a financial interest and allow them to file
7   a motion.  And we cited, Your Honor, in our reply brief a
8   handful of cases that reject the notion that merely by
9   opposing another movant's motion and highlighting the
10  deficiencies in their motion in no way makes you inadequate.
11      So, therefore, we submit that there are no arguments
12  against Alaska itself, other than, essentially, it lacks the
13  largest financial interest in the period that Michigan's
14  counsel expanded.
15      Now I'd like to turn to why we urge Your Honor to find
16  that MERS is not the presumptive lead plaintiff.
17      Almost three years ago the judges of this district,
18  including Your Honor, took the highly unusual step of
19  convening an en banc panel in Dondi to adopt standards of
20  litigation conduct for attorneys because the courts were all
21  too often refereeing abusive litigation tactics.
22      20 years ago Congress passed the Reform Act to eradicate
23  abuses by lawyers in securities litigation and implemented the
24  lead plaintiff procedures specifically to ensure that
25  securities litigation was client driven and not lawyer driven.

1  And 15 years ago the Fifth Circuit in Berger versus
2  Compaq said and I'm quoting, "Class action lawsuits are
3  intended to serve as a vehicle for capable, committed
4  advocates to pursue the goals of the class members through
5  counsel, not for capable, committed counsel to pursue their
6  own goals through those class members."
7  And then later that same year the Third Circuit in
8  Cendant warned district courts to guard against the efforts of
9  lawyers hoping to assure their eventual appointment as lead
10 counsel.
11 And in our opening motion, Your Honor, in footnote 1, we
12 warned about the very type of lawyer-driven maneuvering that
13 the Reform Act, Berger and Cendant hoped would not continue.
14 And, unfortunately, nothing before the court dispels our
15 initial concern.
16 As Your Honor noted, for 54 days of the 60-day statutory
17 period, the class period in this case encompassed purchasers
18 of Pier 1 stock between December 2013 and February 2015.
19 It is undisputed and they admit MERS was not a member of
20 that class and was not eligible to file a lead plaintiff
21 motion, because it did not purchase any stock in that period.
22 So what did they do?
23 They chose to lay behind the log for almost the entire
24 statutory period and filed a complaint almost a full month
25 after the last event in their modified class period and just

1  three business days before the statutory deadline expired,
2  with a class period that just happened to encompass MERS
3  purchase.
4  　　　In addition, the Kenney complaint, the first filed
5  complaint that altered the -- that alleged the original class
6  period, was voluntarily dismissed just days before the
7  opposition briefs were due, which conveniently allowed them to
8  argue in their opposition brief that that original class
9  period had no impact on the court's analysis.
10 　　　Judge King of the Central District of California called
11 this precise argument more than a bit artificial in the
12 Corinthian Colleges case where similar strategic voluntary
13 dismissal occurred mid-briefing that allowed them to take a
14 similar position in this case.
15 　　　And, unfortunately, what transpired here and in the
16 Corinthian case are not isolated incidents.  It's a deliberate
17 strategy intended to tilt the playing field and influence the
18 court's lead plaintiff determination.
19 　　　For example, in the Vale case pending before the judge --
20 before Judge Woods in the Southern District of New York, which
21 was filed after our reply brief was filed here, a complaint,
22 just like here, was filed four days before the deadline that
23 alleged a significantly longer class period and included an
24 additional security.
25 　　　With its motion Michigan's counsel filed a lead plaintiff

PAMELA J. WILSON, CSR/RMR/CRR
U.S. DISTRICT COURT - 214.662.1557

8

1   certification that was dated before the new complaint was
2   filed and notice was issued, including transactions for the
3   expanded class period that had not even been filed yet and had
4   not been publicized, and that begs the question how did they
5   know about the expanded class period that hadn't been filed
6   and hadn't been noticed.
7       So what's the significance of that event?
8       Well, a competing movant in that case, that does not have
9   the largest financial interest in the new period that was
10  filed just four days before it, has argued that their clients
11  have gains in that case, which is why the expanded class
12  period was filed.  And their response to that argument is the
13  exact same that they make here, the longest class period is
14  per se determinative because more people are harmed, and a
15  press release was issued four days before the deadline.
16      The common theme in each of these situations involving
17  Michigan's counsel is this:  It's a strategic filing and
18  dismissal of a complaint just before the deadline, or
19  mid-briefing, that increases the likelihood of them being
20  appointed as lead counsel.  This conduct is exactly what Judge
21  Kinkeade on Tuesday of this week called - and I'm using his
22  word - shenanigans in a case against Trinity Industries in a
23  lead plaintiff situation.
24      This is not what Congress intended when it enacted the
25  PSLRA.  This is not what the Fifth Circuit talked about in

1  Berger when it asked courts to be more vigilant.
2  I want to turn to their argument about the longest class
3  period and that it per se controls. And it might have some
4  initial appeal for the court, because the court's instinct is
5  going to be to protect more class period -- more class members
6  at the outset. But courts don't hesitate to look behind the
7  curtain and reject the argument when there is apparent
8  manipulation by counsel for the movant that disproportionately
9  benefits from that expansion.
10  First of all, the PSLRA doesn't contemplate what they're
11  advocating. If the court looks at the statute carefully,
12  there are several provisions that talk about the notice
13  provision. The first is the early notice to class members,
14  which requires a notice to be published within 60 days of the
15  filing of the -- sorry, within 20 days of the filing of the
16  first complaint that gives class members notice of the filing,
17  tells them the class period in the case, the right to speak
18  appointment within 60 days.
19  The PSLRA also has a provision that talks about when
20  there are multiple actions filed, as happened in this case.
21  And when multiple actions are filed the PSLRA says you don't
22  need to file another notice, therefore, the initial notice
23  controls. That's significant. Because the language in the
24  statute about the notice controlling falls in two sections
25  controlling the lead plaintiff appointment.

<u>C E R T I F I C A T I O N</u>

    I, PAMELA J. WILSON, CSR, certify that the foregoing is a transcript from the record of the proceedings in the foregoing entitled matter.

    I further certify that the transcript fees format comply with those prescribed by the Court and the Judicial Conference of the United States.

    This the 4th day of March, 2016.

                              s/Pamela J. Wilson
                              PAMELA J. WILSON, RMR, CRR
                              Official Court Reporter
                              The Northern District of Texas
                                  Dallas Division