IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TOWN OF DAVIE POLICE PENSION §
PLAN, individually and on behalf of all §
others similarly situated, §
§
Plaintiff, §
§ Civil Action No. 3:15-CV-3415-D
VS. §
§
PIER 1 IMPORTS, INC., et al., §
§
Defendants. §

MEMORANDUM OPINION
AND ORDER

In this putative class action alleging securities fraud, two plaintiffs[1] move for appointment as lead plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, and for approval of its selection of lead counsel.[2]  For the reasons that follow, the court grants the motion of plaintiff Municipal Employees' Retirement System of Michigan ("Michigan") and denies the motion of plaintiff Alaska Electrical Pension Fund ("Alaska").

I

Plaintiffs sue Pier 1 Imports, Inc. ("Pier 1") and two of its executives for securities

_____

[1]A third plaintiff—Employees' Retirement System of the Puerto Rico Electric Power Authority ("PREPA")—essentially conceded in its response that it did not qualify for appointment as lead plaintiff, and it did not appear at oral argument.  Accordingly, the court denies PREPA's October 26, 2015 motion for appointment of lead plaintiff and for approval of selection of lead counsel.

[2]The parties also move to consolidate this case with another suit.  Because that suit has been dismissed on the plaintiff's notice of dismissal, the court denies the request as moot.

fraud under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  The instant putative class action—*Town of Davie Police Pension Plan v. Pier 1 Imports, Inc. et al.*, No. 3:15-CV-3415-D (N.D. Tex. filed Oct. 21, 2015) ("*Town of Davie*")—is the remaining case of two lawsuits.  The other case—*Kenney v. Pier 1 Imports, Inc. et al.*, No. 3:15-CV-2798-D (N.D. Tex. filed Aug. 28, 2015)—was dismissed on the plaintiff's notice of dismissal.[3]  Michigan and Alaska move to be designated lead plaintiff and for approval of their choice of lead counsel.[4]  The court has heard oral argument.

II

Under the PSLRA, the court must "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members[.]" 15 U.S.C. § 78u–4(a)(3)(B)(I).  The court must presume

> that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
>
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(I);

---

[3]The court for reference will use the relevant case name when referring to the filings in these actions.

[4]Plaintiffs Kathleen D. Kenney, James Greenshields, and Janis Su also moved for appointment of lead plaintiff, approval of lead counsel, and consolidation of related actions, but they later filed a notice of non-opposition to competing motions for similar relief. Consequently, the court terminated their motion.

  (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

  (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u–4(a)(3)(B)(iii)(I).

  It is undisputed that Michigan and Alaska timely moved for appointment,[5] and that they satisfy the typicality and adequate representation requirements of Fed. R. Civ. P. 23(a). The only disputed issue—and thus the dispositive question—is whether Michigan or Alaska has the largest financial interest in the relief sought by the class.

---

  [5]Under the PSLRA, within 20 days of filing the complaint, the plaintiff

  shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—

  (I) of the pendency of the action, the claims asserted therein, and the purported class period; and

  (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u–4(a)(3)(A)(I). "If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (I)." *Id.* at § 78u–4(a)(3)(A)(ii).

  *Kenney* was filed on August 28, 2015, and, on that same day, notice of the pendency of *Kenney* was published on *Business Wire.* On October 21, 2015 *Town of Davie* was filed, expanding the class period through September 24, 2015, and, on that same day, notice of pendency of *Town of Davie* was published on *PRNewswire.* All class members seeking appointment as lead plaintiff filed motions on October 26, 2015. Michigan and Alaska therefore both satisfy the first requirement of the PSLRA.

III

Michigan and Alaska disagree on which class period the court should use in determining the party with the largest financial interest.[6]

A

"[N]umerous courts have favored using the longest-noticed class period" for purposes of selecting a lead plaintiff. *In re BP, PLC Sec. Litig.*, 758 F.Supp.2d 428, 433-34 (S.D. Tex. 2010) (citing cases). This is because the longest, most inclusive class period encompasses more potential class members and increases potential damages. *See, e.g., Hom v. Vale, S.A.*, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016) ("[T]he Court finds that the use of the longer, more inclusive class period is proper . . . because the longer class period encompasses more potential class members and damages."); *In re Doral Fin. Corp. Sec. Litig.*, 414 F.Supp.2d 398, 402-03 (S.D.N.Y. 2006) (same). Courts often disfavor making determinations regarding the merits of competing class periods at this early stage in litigation without the benefit of adversarial briefing. *See, e.g., In re BP*, 758 F.Supp.2d at 434 (quoting *Miller v. Dyadic Int'l, Inc.*, 2008 WL 2465286, at *4 (S.D. Fla. Apr. 18, 2008)) ("The Court agrees with the district courts cited above who have found it generally inappropriate to narrow the class period at this stage of the litigation. 'Narrowing the class period is more appropriate at a later stage of litigation, with participation from the Defendant[s].'"); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624-25

---

[6]Michigan and Alaska agree on the total amount of their financial interests within the two potential class periods.

(E.D. Wis. 2009) (explaining that it makes sense to define "class" as the broadest, most inclusive potential class "because at the outset of a case the court should view the facts in the light most favorable to the plaintiffs and should narrow the allegations only after the parties have had the opportunity to develop the record"); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008) ("[I]t would be premature for the court to use a class period that disregards damages potentially suffered due to [defendant's] alleged misrepresentation."); *Grand Lodge of Pa. v. Peters*, 2007 WL 1812641, at *2 (M.D. Fla. June 22, 2007) ("[Lead plaintiff movant] asks this Court to delve into the merits of the claims and to define the class period at this early stage of the proceedings before a class has been certified or those issues have been fully briefed. This it cannot do.").

Courts often do not blindly accept the longest class period, however, without further inquiry, because of the risk that "potential lead plaintiffs would be encouraged to manipulate the class period so they had the largest financial interest." *In re BP*, 758 F.Supp.2d at 434 (citing *MGIC*, 256 F.R.D. at 625). "[A]lthough courts avoid fully considering the merits of the claims at this stage, . . . they have disagreed about the appropriate level of scrutiny to apply to the longest noticed class period." *Id.* (citation omitted). Alaska and Michigan appear to follow the standard set out in *In re BP* and *MGIC*, where the courts "use[d] the longest noticed class period unless the factual allegations supporting that period [were] 'obviously frivolous.'" *Id.* (quoting *MGIC*, 256 F.R.D. at 625); *see also MGIC*, 256 F.R.D. at 625 ("I find that an adequate safeguard against abuse is to simply review the complaint and briefs to make sure that the allegations supporting the longer class period are not obviously

frivolous."). Another court, however, has applied a plausibility standard identical to the one used in evaluating a motion to dismiss. *See In re Centerline Holding Co. Sec. Litig*, 2008 WL 1959799, at *3 (S.D.N.Y. May 5, 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The court need not decide, however, the appropriate level of scrutiny to apply in this case to the longest noticed class period because the court reaches the same result under either standard.

B

1

Michigan maintains that the court should follow the longer class period—December 19, 2013 through September 24, 2015—alleged in *Town of Davie*. Alaska posits that the court should follow the shorter class period—December 19, 2013 through February 10, 2015—alleged in *Kenney* . Alternatively, Alaska asserts that, if the court follows the longer class period in *Town of Davie*, it should find that Michigan manipulated the class period so that it had the largest financial interest, and should disqualify Michigan from consideration for selection as lead plaintiff.

The parties agree that, under the longer class period, Michigan has the largest financial interest in the relief sought: Michigan purchased 367,600 shares of Pier 1 common stock and allegedly suffered $2.3 million in losses. Alaska purchased 70,406 shares of Pier 1 common stock and allegedly incurred $425,164 in losses. It also is undisputed that, if Michigan were disqualified from appointment, Alaska would have the largest financial interest of the remaining eligible plaintiffs under the longer class period. The parties also

agree that, under the shorter class period, Alaska has the largest financial interest in the relief sought: Alaska purchased 55,367 shares of Pier 1 common stock and allegedly suffered $219,103 in losses, while Michigan did not purchase any shares of Pier 1 common stock or suffer any losses.

2

According to the complaint in *Kenney*, Pier 1 announced on December 19, 2013 that its financial condition was improving and, following a disappointing prior quarter, Pier 1 had achieved "solid third quarter financial results." *Kenney* Compl. ¶ 4. Pier 1 further stated that its "1 Pier 1" initiative aimed at combining e-commerce and in-store buying experience had been a "resounding success" and would be "an important growth driver going forward." *Id.* On this news, shares of Pier 1 common stock rose 5%. On February 10, 2015, however, Pier 1 reduced its financial guidance for the fiscal year ending February 28, 2015, attributing the sudden change in outlook to softer than expected sales in January and February 2015 and "unplanned" expenses primarily related to incremental supply chain costs associated with the "1 Pier 1" initiative. And Pier 1 announced that its Chief Financial Officer had retired. On this news, the price of Pier 1 shares fell from $16.97 per share to $12.84, or approximately 25%, on over 36 million shares traded.

The complaint in *Town of Davie* alleges that, on September 24, 2015, Pier 1 significantly reduced its earnings guidance for fiscal 2016, which it attributed to margin pressures from increased promotional and clearance activity, as well as inventory-related issues within its distribution center network. Pier 1 also announced results for the fiscal

second quarter that ended August 20, 2015 that were lower than investors had been led to expect, and, despite assurances that inventory levels would normalize, Pier 1's inventories spiked to $533 million, up 11% since the February 2015 disclosures. As a result, and contrary to Pier 1's prior statements, Pier 1 was forced to offer steeper discounts and sales promotions, which caused the company's margins to contract. On this news, the price of Pier 1 shares fell from $8.67 per share to $7.61, or 12.2%.

3

Alaska avers that Michigan manipulated the class period so that it had the largest financial interest. Alaska asserts that Michigan first purchased shares on March 20, 2015, and thus Michigan did not purchase any shares until after the shorter class period alleged in *Kenney* had closed. As a result, Michigan was not a class member and not eligible for appointment as lead plaintiff. To overcome this hurdle, Alaska maintains that, six days before the lead plaintiff motion deadline expired, Michigan's counsel filed the complaint in *Town of Davie* solely to allow Michigan to assert a loss by extending the class period to encompass Michigan's purchases in March and April. Alaska argues that, because of this, the court should either (1) use the shorter class period, and appoint Alaska as lead plaintiff because it suffered the largest loss, or (2) use the longer class period, disqualify Michigan from consideration, and name Alaska lead plaintiff because it suffered the largest loss among the remaining eligible candidates.

Michigan contends, however, that the longer class period asserted in *Town of Davie* should be used because it is not "obviously frivolous." Michigan maintains that the

complaint in *Town of Davie* was filed to allege new and important facts regarding Pier 1's misrepresentations that occurred after the *Kenney* lawsuit was filed. Michigan also posits that, when Pier 1 finally made these facts public, it corrected its prior misrepresentations regarding its inventory levels and margins, causing the price of the company's stock to drop by approximately 12%, which led to further damages to the class.

4

The court finds that the facts alleged in support of the longer class period in *Town of Davie* are not frivolous and are plausible. Alaska only contends that the filing of the complaint in *Town of Davie* was tactical. It does not posit that the facts giving rise to the longer class period are frivolous, and it does not offer any reason to disregard these allegations. In fact, Alaska's counsel acknowledged at oral argument that these allegations are plausible. And, in Alaska's motion, it uses its financial interest in the longer class period to argue that it has the largest financial interest in the relief sought. It is therefore reasonable to infer that Alaska not only believes the allegations supporting the longer class period are plausible, they are meritorious.

Critically, the longer class period benefits all plaintiffs because their financial interests are significantly larger in the longer class period than in the shorter class period. For example, Alaska's financial interest nearly doubles in the longer class period as compared to its financial interest in the shorter class period.[7] Additionally, plaintiff Employees'

---

[7]During the shorter class period in *Kenney*, Alaska purchased 55,367 shares of Pier 1 common stock and allegedly suffered $219,103 in losses, and, during the longer class

Retirement System of the Puerto Rico Electric Power Authority ("PREPA"), who also moved for appointment as lead counsel, *see supra* note 1, followed the longer class period in *Town of Davie*, and recognized in its response that "[Michigan] appears to have the largest financial interest" in the action.  PREPA Resp. at 2.  The court therefore concludes that the allegations supporting the longer class period in *Town of Davie* are not obviously frivolous and survive the plausibility standard.  Accordingly, Michigan has demonstrated that it is entitled to the presumption that it is the most adequate plaintiff.

IV

To rebut the presumption that Michigan is the most adequate plaintiff, Alaska must offer "proof" that Michigan "will not fairly and adequately protect the interests of the class; or . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).  The court has already discussed and dismissed Alaska's challenge that Michigan's counsel tactically filed the complaint in *Town of Davie* the week before the lead plaintiff deadline to manipulate the lead plaintiff determination.

Alaska also contends that Michigan could be subject to unique defenses concerning its standing.  Alaska posits that the defendants will attempt to trim the case to end in February 2015, and Michigan will be forced to divert its attention away from advancing the class's interests in order to defend itself at the class's expense.  Alaska posits that, if

_____

period in *Town of Davie*, Alaska purchased 70,406 shares of Pier 1 common stock and allegedly suffered $425,164 in losses.

defendants prevail, Michigan will lack standing to represent the putative class because it purchased no shares before March 2015, and it will be necessary for the court to reopen the lead plaintiff appointment process.

"There is, of course, a marked difference between affirmatively demonstrating that [Michigan] is not an adequate representative or is subject to unique defenses and simply claiming that [Michigan] *might* be subject to such arguments in the future." *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 547 (N.D. Tex. 1997) (Buchmeyer, C.J.) (emphasis in original). Alaska has used the latter approach, merely alleging that the defendants might later challenge Michigan's standing. "Such speculative assertions are insufficient to rebut the presumption that [Michigan] is the most adequate plaintiff." *Id.*; *see also Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 189 (S.D.N.Y. 2006) (citing cases) (rejecting "speculative and hypothetical argument that [lead plaintiff] *might* be subject to a later attack by Defendants") (emphasis in original). "The statute requires [Alaska] to present 'proof' of its assertions[.]" *Gluck*, 976 F. Supp. at 547-48 (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)). And Alaska fails to offer any proof that Michigan lacks standing or likely will be subject to such a challenge. As discussed above, Alaska does not attempt to challenge the facts alleged in support of the longer class period in *Town of Davie*, and Alaska appears to acknowledge that the facts alleged in support of the longer class period are meritorious. Accordingly, Alaska has failed to rebut the presumption that Michigan is the most adequate plaintiff.

\* \* \*

For the reasons explained, the court grants Michigan's October 26, 2015 motion for

appointment as lead plaintiff and for approval of lead plaintiff's selection of lead counsel. The court designates Michigan as lead plaintiff and approves Bernstein Litowitz Berger & Grossmann LLP as lead counsel.  The court denies Alaska's October 26, 2015 motion for appointment as lead plaintiff and for approval of selection of lead counsel.

      **SO ORDERED**.

      April 25, 2016.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE