**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| TOWN OF DAVIE POLICE PENSION PLAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>PIER 1 IMPORTS, INC., ALEXANDER W. SMITH, and CHARLES H. TURNER,<br><br>    Defendants. | Case No. 3:15-CV-3415-D<br>Honorable Sidney A. Fitzwater |

**DEFENDANTS' BRIEF IN SUPPORT OF**
**MOTION TO STRIKE EXPERT REPORT OF MARK COHEN**

Pursuant to Federal Rule of Civil Procedure 12(f), defendants Pier 1 Imports, Inc., Alexander W. Smith, and Charles H. Turner move to strike the Expert Report of Mark Cohen [Dkt. No. 86-1] and those portions of the Amended Class Action Complaint [Dkt. No. 86] ("Amended Complaint") filed by plaintiff Municipal Employees' Retirement System of Michigan ("MERS") that rely upon his opinions.

**I.   PRELIMINARY STATEMENT**

This Court dismissed MERS' Consolidated Class Action Complaint [Dkt. No. 56] (the "Original Complaint") because MERS failed to plead its securities fraud claims with sufficient detail to meet the heightened pleading standards set forth under Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). 15 U.S.C. § 78u-4. MERS has attempted to cure its pleadings defects by relying on the opinions of Mark Cohen, a purported "retailing expert."  Dkt. No 86 at 5.  While Cohen's opinions ultimately offer nothing

that aids MERS' quest to state a claim, they are also procedurally impermissible to consider in ruling on a motion to dismiss.

Cohen has no personal knowledge of any of the facts that form the basis of MERS' fraud claims. His report is not a proper part of the pleadings, and consideration of his opinions would require evidentiary determinations that are not appropriate at this stage of the proceedings. As the Fifth Circuit ruled in striking an expert report in another securities case, "opinions cannot substitute for facts under the PSLRA." *Fin. Acquisition Partners L.P. v. Blackwell*, 440 F.3d 278, 285 (5th Cir. 2014). The entirety of Cohen's report and the portions of the Amended Complaint that rely upon it should be stricken and disregarded in the Court's consideration of defendants' motion to dismiss.

## II. ARGUMENT

The PSLRA imposes "exacting pleading requirements" on plaintiffs alleging securities fraud. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Plaintiffs are required "to state with particularity both the facts constituting the alleged violation, and the facts evidencing . . . the defendant's intention to 'deceive, manipulate, or defraud.'" *Id.* (quoting *Ernst & Ernst Hochfelder*, 425 U.S. 185, 194 (1976)). MERS' Original Complaint was dismissed due to its failure to plead sufficient facts to comply with this heightened standard. Dkt. No. 85 at 63.

MERS has attempted to address the deficiencies in its pleading by relying on the opinions of Cohen. For example, one of the most central allegations in MERS' Original Complaint was that defendants' characterization of Pier 1's inventory levels as "clean" was a material misrepresentation because inventory levels were "excessive," did not "correspond with actual demand," and "require[d] costly markdowns to clear." Dkt. No. 56 at ¶ 5. The Court rejected MERS' contention, finding its "allegations insufficient to plausibly allege that defendants used the term 'clean' in the way MERS describe[d]." Dkt. No. 85 at 15. In response, MERS has advanced

a new definition of the term "clean" through the opinion of its so-called "retailing expert."  Dkt. No 86 at 5.  Cohen defines the term to mean "merchandise that is compatible with what a retailer is currently offering to its customers for sale."  Dkt. No. 86-1 at 5.  The revised definition is as vague as MERS' original, and it is based entirely on Cohen's own personal opinion.  He does not purport to rely on any "case, treatise, or article" to support his definition, nor does he make any claim that his own definition is consistent with any widely-held industry standard.  Dkt. No. 85 at 14 (quoting Ds. Reply [Dkt. No. 73] at 20).

MERS also relies heavily on Cohen for his opinion that Pier 1 is a "specialty fashion and seasonal home goods retailer" whose merchandise is "highly concentrated in seasonal and fashion products" that are "constantly susceptible to becoming obsolete, and thus always subject to regular markdowns."  Dkt. No. 86 at ¶ 42; Dkt. No. 86-1 at 9.  This new allegation is advanced in response to the Court's conclusion that MERS "failed to plead with particularity facts giving rise to the strong inference that Smith or Turner knew . . . that Pier 1 was stuck with a material amount of obsolete merchandise that required clearance markdowns."  Dkt. No. 85 at 26.  Instead of pleading particularized facts to identify any "large stockpiles of obsolete inventory, such as out-of-date seasonal inventory or SKUs that were not selling," [Dkt. No 85 at 39] MERS relies on Cohen for his conclusory opinion that *all* of Pier 1's inventory is "particularly susceptible to becoming obsolete."  Dkt. No. 86 at ¶ 4.

The remainder of Cohen's report is offered as support for MERS' previously advanced core operations theory of scienter—namely, that due to Smith and Turner's positions within the company and the importance of inventory to a retailer like Pier 1, they must have been aware of the excessive inventory levels and associated markdown risk that were allegedly present throughout the Class Period.  The Court rejected this theory on the grounds that "[a]s a general

matter, 'a pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement due to their positions within the company.'"  Dkt. No. 85 at 30 (quoting *Neiman v. Bulmahn*, 854 F.3d 741, 749 (5th Cir. 2017)).  The Court also specifically concluded that MERS' factual allegations were nevertheless insufficient to establish that defendants knew or were reckless in disregarding the fact "that Pier 1 would . . . have to mark its excess inventory down in order to sell it."  Dkt. No. 85 at 33.  The Amended Complaint does not contain any new facts to support MERS' theory of scienter.  MERS instead relies on Cohen to opine that "in [his] experience, every retail CEO and CFO would have immediately become aware of the presence of excess inventory," and the associated markdown risk based the same "red flags" MERS cited in its Original Complaint.  Dkt. No. 86-1 at 10; Dkt. No. 86 at ¶ 178(c).  MERS' reliance on Cohen for these conclusory opinions is inappropriate at this stage of the pleadings for a number of reasons.

### A. Cohen's expert report is not a proper "written instrument" under Federal Rule of Civil Procedure 10(c).

As an initial matter, Cohen's expert report should be excluded on the grounds that it is not a proper "written instrument" under Federal Rule of Civil Procedure 10(c).  Rule 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  The types of "written instruments" contemplated by the rule, however, do not include expert testimony.  Rather, a "'written instrument' within the meaning of Rule 10(c) 'is a document evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement.'"  *DeMarco v. Depotech Corp.*, 149 F. Supp. 2d 1212, 1220 (S.D. Cal. 2001) (quoting *Murphy v. Cadillac Rubber & Plastics, Inc.*, 946 F. Supp. 1108, 1115 (W.D.N.Y 1996)).  "The documents that satisfy this definition 'consist largely of documentary evidence, specifically, contracts, notes, and other

writings on which a party's action or defense is based.'" *Id*. (quoting *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989)).

Cohen's expert report "does not resemble any of the classes of documents that meet the definition of a 'written instrument' under Rule 10(c)." *DeMarco*, 149 F. Supp. 2d at 1220.  It is merely a "piece of evidentiary matter generated by a retained expert who had no contact with [defendants]" and no personal knowledge of any of the facts alleged in the Amended Complaint. *Id*.  Cohen's report "contains [his] assessment of Defendants' public statements, but it does not form the basis of Plaintiff's claims."  *Id*.  His report therefore does not "qualify as a 'written instrument' within the meaning of Rule 10(c)" and it should be stricken from the Amended Complaint.  *Id*. at 1222; *see also Blackwell*, 440 F.3d at 285 (affirming the district court's conclusion that the opinion portion of the expert affidavit did not constitute "a written instrument under Rule 10," and therefore was not appropriate for consideration at the pleading stage).[1]

### B. Considering Cohen's expert report would impermissibly require the Court to determine evidentiary issues at the pleading stage.

Considering Cohen's expert report would force the Court to confront evidentiary issues that are inappropriate for resolution at the motion to dismiss stage of the pleadings.  This district has already addressed this precise issue in the context of a securities class action lawsuit and concluded that "an expert's affidavit is not properly considered when it is attached to a plaintiff's complaint."  *Fin. Acquisition Partners, L.P. v. Blackwell*, No. 3:02-CV-1586-K, 2004 U.S. Dist. LEXIS 20110, at *11 (N.D. Tex. Sept. 29, 2004).  In reaching his conclusion in *Blackwell*, Judge Kinkeade relied primarily on the reasoning of the Southern District of California in *DeMarco*.

---

[1] The Fifth Circuit did not address whether "*non-opinion* portions of an expert's affidavit constitute an instrument pursuant to Rule 10."  *Blackwell*, 440 F.3d at 286.  Because Cohen's expert report does not contain any such "*non-opinion* portions," this distinction is irrelevant to this motion.

In *DeMarco*, the district court was confronted with the same issue and held that "it had to disregard the affidavit of [plaintiff's] expert in considering defendant's motion to dismiss because considering the opinion of an expert . . . on a motion to dismiss forces a district court to confront a 'myriad of complex evidentiary issues not generally capable of resolution at the [pleading] stage.'" *Blackwell*, 2004 U.S. Dist. LEXIS 20110, at *10-11 (quoting *DeMarco*, 149 F. Supp. 2d at 1221). By way of example, the *DeMarco* court cited to the district court's role of "gatekeeper" with respect to expert testimony and the litany of factors it must consider to "ensure that the testimony is reliable and would assist the trier of fact." *DeMarco*, 149 F. Supp. 2d at 1221.[2] Evaluating these factors at the motion to dismiss stage would be "inappropriate in any civil case and would likely run afoul of the discovery stay imposed by the [PSLRA]." *Id*. (citing 15 U.S.C. § 78u-4(b)(3)(B) (mandating a stay of discovery in private securities actions during the pendency of a motion to dismiss)). The court also expressed concern that the "contents of an expert affidavit [would be] susceptible to a panoply of evidentiary and procedural challenges not generally applicable to allegations in a complaint." *Id*. "In sum," it reasoned that "considering an expert affidavit would so complicate the procedural posture of a motion to dismiss that it would become virtually indistinguishable from a motion for summary judgment. *Id*.[3]

---

[2] Such factors include "(1) the objective testability of the expert's technique or theory, (2) whether the technique or theory had been subjected to peer review and publication, (3) the error rate for the technique or theory, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been accepted in the community." *DeMarco*, 149 F. Supp. 2d at 1221 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993)).

[3] The *DeMarco* court struck the expert affidavit, but permitted portions of the affidavit that had been replicated within the second amended complaint to remain intact. *Id*. at 1222. In *Blackwell*, the district court did not directly address this nuance in the *DeMarco* holding, but it held more broadly that it would "not consider *any conclusions* reached by [plaintiff's expert] in making its decision on the Defendants' motions to dismiss." *Blackwell*, 2004 U.S. Dist. LEXIS 20110, at *12 (emphasis added). As *Blackwell* suggests, the ministerial difference of citing or quoting expert opinions in an amended complaint in lieu of attaching an expert report would not resolve the problems inherent in considering expert opinions when determining a motion to dismiss.

In *Blackwell*, this district agreed with the holding in *DeMarco* and the rationale of the other courts that had similarly "refused to consider an expert's affidavit at the motion to dismiss stage of a securities fraud case." *Blackwell*, 2004 U.S. Dist. LEXIS 20110, at *11 (citing *In re Viropharma, Inc. Sec. Litig.*, No. 02-1627, 2003 U.S. Dist. LEXIS 5623, (E.D. Penn. Apr. 7, 2003); *In re Empyrean Biosciences, Inc. Sec. Litig.*, 219 F.R.D. 408 (N.D. Ohio 2003); *Benzon v. Stanley*, No. 3:03-0159, 2004 U.S. Dist. LEXIS 2669 (M.D. Tenn. Jan. 8, 2004)).[4]   The Fifth Circuit subsequently affirmed, agreeing with this district's reasoning and expressing its concern that "considering [expert] opinions might require a ruling on the expert's qualifications," which "would be inappropriate at the pleading stage." *Blackwell*, 440 F.3d at 286.

## C. Cohen's expert opinions cannot supply the requisite particularity to support a securities fraud claim under Federal Rule of Civil Procedure 9(b) or the PSLRA.

Apart from the foregoing concerns, Cohen's expert report should be disregarded because opinions are not a suitable substitute for the factual particularity required to state a securities fraud claim under Federal Rule of Civil Procedure 9(b) or the PSLRA.   The *DeMarco* court addressed this issue:

> The inclusion of [an expert] affidavit in no way relieves a plaintiff of its burden to comply with the [PSLRA] and the applicable provisions of the Federal Rules of Civil Procedure.  Because the Court must generally assume the truth of all material factual allegations in a complaint, averments in an expert affidavit carry no additional probative weight merely because they appear within an affidavit rather than numbered paragraphs of the complaint.  A securities fraud complaint must, regardless of its form and attachments, provide the factual specificity required by the PSLRA and Rule 9(b).  Conclusory allegations and speculation carry no

---

[4] Since *Blackwell* was decided, a number of securities fraud cases have reached similar conclusions. *See, e.g.*, *Lerner v. Northwest Biotherapeutics*, No. GJH-15-2532, 2017 U.S. Dist. LEXIS 50843, at *31 (D. Md. Mar. 31, 2017) ("Plaintiffs may not substitute factual allegations with the speculation of their expert witness."); *In re Resonant, Inc. Secs. Litig.*, No. CV 15-1970 SJO (VBKx), 2016 U.S. Dist. LEXIS 189798, at *11 (C.D. Cal. July 11, 2016) (striking expert affidavit "utilized to fulfill previously under-pleaded elements of [p]laintiff's claims."); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 5:11-CV-04003-LHK, 2013 U.S. Dist. LEXIS 70531, at *24-25 (N.D. Cal. May 17, 2013) (finding "particularly persuasive the *DeMarco* court's observation that '[t]he inclusion of such an affidavit in no way relieves a plaintiff of its burden to comply with the [PSLRA] and the applicable provisions of the Federal Rules of Civil Procedure.'"); *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, No. CV 11 – 9495 PSG (JCGx), 2013 U.S. Dist. LEXIS 72683, at *37 (C.D. Cal. May 9, 2013).

additional weight merely because a plaintiff placed them within the affidavit of a retained expert.

*DeMarco*, 149 F. Supp. 2d at 1222.  The Fifth Circuit echoed this sentiment in *Blackwell*, noting that "PSLRA complaints must allege specific facts demonstrating material misstatements or omissions made with scienter" and concluding that "opinions cannot substitute for facts under the PSLRA."  440 F.3d at 286.  On the basis of this controlling precedent, MERS cannot rely on Cohen's opinions to satisfy the heightened pleading requirements set forth in Rule 9(b) and the PSLRA, and his report should be stricken.[5]

Further, although both this Court and the Fifth Circuit recognized in *Blackwell* that the "non-opinion" portions of an expert's affidavit may be properly considered at the pleading stage, MERS does not rely on Cohen to supply anything outside of his own opinions.  *Blackwell*, 2004 U.S. Dist. LEXIS 20110, at *11, 440 F.3d at 286.  Cohen has no personal knowledge of any of the facts underlying MERS' claims, and he is careful to characterize his report as containing only his opinions on the subject matters he was specifically asked to address.  Dkt. No. 86-1 at 2.  He was "asked to provide opinions on the retailing industry, Pier 1 Imports, and issues and considerations related to retail inventory and markdown risk."  *Id*. at 2.  His report contains his "opinions on these subjects," and does "not attempt[] to determine any factual matter . . . in dispute."  *Id*. at  2, 4.

---

[5] Defendants are aware of securities cases from outside this jurisdiction that have permitted expert testimony to be considered in ruling on a motion to dismiss in certain circumstances, but those cases are distinguishable (in addition to being at odds with binding Fifth Circuit precedent).  For example, *In re CommVault Systems, Inc. Secs. Litig.*, involved expert testimony aimed at providing "technical support" the court had specifically requested to support plaintiff's allegation of improper accounting practices.  No. 14-cv-5628 (PGS), 2016 U.S. Dist. LEXIS 135257, at *13-15 (D.N.J. Sept. 30, 2016).  Cohen's report does not purport to offer any such "technical support" and none was requested by this Court in dismissing MERS' Original Complaint.  Other cases that have allowed expert testimony to be considered in resolving a motion to dismiss involve situations where "the expert reports were not essential to the Court's decision and were used 'merely to buttress' the plaintiff's contentions."  *In re Herbalife, Ltd. Sec. Litig.*, CV 14-2850 DSF (JCGx), 2015 U.S. Dist. LEXIS 186970, at *2-3 (C.D. Cal. July 28, 2015) (quoting *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 821 (C.D. Cal. 2011)).  Here, it cannot be said that Cohen's report is offered "merely to buttress" factual allegations that are otherwise sufficient to state a securities fraud claim.

Because Cohen has expressly disavowed any notion that his report contains any independently verifiable facts, it should be excluded in its entirety.

### III. CONCLUSION

For the reasons set forth above, Cohen's expert report and those portions of MERS' Amended Complaint that rely upon it should be stricken and disregarded in the Court's consideration of defendants' motion to dismiss.

DATED: November 22, 2017          Respectfully submitted,

/s/ *Stephen B. Crain*
Stephen B. Crain (Attorney In Charge)
Texas Bar No. 04994580
Bradley J. Benoit
Texas Bar No. 24012275
**BRACEWELL LLP**
711 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 221-1305
Facsimile: (713) 221-1212
stephen.crain@bracewell.com
brad.benoit@bracewell.com

Joseph M. Cox
Texas Bar No. 04950200
**BRACEWELL LLP**
1445 Ross Avenue, Suite 3800
Dallas, Texas 75202
Telephone: (214) 468-3800
Facsimile: (800) 404-3970
joe.cox@bracewell.com

*Counsel for Defendants Pier 1 Imports, Inc.,*
*Alexander W. Smith, and Charles H. Turner*

### CERTIFICATE OF SERVICE

I certify that this motion was electronically filed with the Clerk of the Court using the CM/ECF system, which will send email notification of this filing to all attorneys of record.

/s/ *Stephen B. Crain*
Stephen B. Crain